**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

WILLIAM C. CHERRY,                              Case No. 1:12-cv-880
      Plaintiff,                             Spiegel, J.
                                                Litkovitz, M.J.

    vs

COMMISSIONER OF                                 **REPORT AND**
SOCIAL SECURITY,                                **RECOMMENDATION**
      Defendant.

      Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial

review of the final decision of the Commissioner of Social Security (Commissioner) denying

plaintiff's applications for disability insurance benefits (DIB) and supplemental security income

(SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 6) and the

Commissioner's response in opposition (Doc. 9).

**I. Procedural Background**

      Plaintiff filed applications for DIB and SSI in May 2009, alleging disability since May 27,

2008, due to memory loss, mental conditions, right knee condition, back problems, slipped disc

in his neck, bulimia, and obsessive-compulsive disorder. These applications were denied

initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a de

novo hearing before administrative law judge (ALJ) Christopher B. McNeil. Plaintiff, plaintiff's

mother, a medical expert (ME), and a vocational expert (VE) appeared and testified at the ALJ

hearing. On June 8, 2011, the ALJ issued a decision denying plaintiff's DIB and SSI

applications. Plaintiff's request for review by the Appeals Council was denied, making the

decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541,

2

548 (6th Cir. 2004).  Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy.  *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

> **B.    The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2013.

> 2. The [plaintiff] has not engaged in substantial gainful activity since May 27, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

> 3. The [plaintiff] has the following severe impairments: status post polytrauma due to a motor vehicle accident with a closed head injury and residual syringomyelia of the thoracic spine, valgus deformities bilaterally with left knee atrophy, right knee medial meniscal tear, mood disorder, cognitive disorder, and social anxiety (20 CFR 404.1520(c) and 416.920(c)).

> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

> 5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) subject to the following: occasionally lift twenty pounds, frequently lift ten pounds; push or pull to the same extent using hand or foot controls; stand or walk about six hours and sit about six hours in an eight hour workday; cannot more than occasionally climb ladders, ropes, or scaffolds; cannot more than occasionally crawl; and due to mental limitations, can understand and remember simple instructions, sustain attention to complete simple repetitive tasks where production quotas are not critical, tolerate co-workers and supervisors with limited interpersonal demands in an object-focused, non-public work setting, and adapt to routine changes in a simple work setting.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[1]

7. The [plaintiff] was born [in] . . . 1976 and was 32 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[2]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from May 27, 2008, through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

(Tr. 27-36).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

---

[1]Plaintiff's past relevant work was as a gas station clerk, hospital housekeeper, an order picker, forklift driver and a maintenance cleaner.  (Tr. 35, 83-84).

[2]The ALJ relied on the VE's testimony to find that plaintiff would be able to perform 2,850 unskilled, light jobs in the regional economy, citing as examples jobs as an inspector, cleaner or sorter. (Tr. 36, 87-88).

4

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 544-46 (reversal required even though ALJ' s decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

On appeal, plaintiff argues that: (1) the ALJ failed to properly consider the effects of his medications in formulating his residual functional capacity (RFC); and (2) the record evidence supports a finding that plaintiff meets or medically equals Listings 12.04, 12.05, and 12.06 and the ALJ erred in finding otherwise. (Doc. 6 at 2-9). For the reasons that follow, the undersigned finds that the ALJ's decision is supported by substantial evidence and recommends that it be affirmed in its entirety.

5

1. The ALJ did not err in assessing the effects of plaintiff's medications on his RFC.

Plaintiff argues that the ALJ erred in formulating plaintiff's RFC by failing to consider the limiting effects of his prescription medications as required by Social Security Ruling 96-7p. Plaintiff asserts that the ALJ hearing testimony provided by him and his mother establishes that he experiences significant side effects from his medications. Plaintiff further asserts that the ALJ's failure to consider or even mention the effects of these medications amounts to reversible error. (Doc. 6 at 2-4).

Social Security Ruling 96-7p explains how the ALJ is to assess plaintiff's statements of pain or other symptoms:

> In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 C.F.R. § 404.1529(c) and § 416.929(c) describe the kinds of evidence, including the factors below, that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements:
>
> 1. The individual's daily activities;
>
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;
>
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

6

7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186, at *3 (1996).[3] However, ALJs are not required to discuss each factor in every case; rather, the ALJ "should provide enough assessment to assure a reviewing court that he or she considered all relevant evidence." *Bowman v. Chater*, No. 96-3990, 1997 WL 764419, at *4 (6th Cir. Nov. 26, 1997).

Plaintiff appears to posit that the ALJ was required to discuss each of the above factors in order for his decision to stand. The Court disagrees. *Bowman* clarifies that the ALJ need only consider the SSR 96-7p factors but it is not necessary for the ALJ to engage in "an extensive analysis in every decision." *Bowman*, 1997 WL 764419, at *4. Moreover, the portion of the hearing transcript cited by plaintiff establishes that the ALJ considered both his reports of medication side effects as well as the medications plaintiff was taking. *See* Doc. 6 at 3-4, citing Tr. 62-63. In light of the ALJ's consideration of the relevant SSR 96-7p factors, the Court finds the ALJ did not fail to consider the side effects of his medication in formulating the RFC.

Insofar as plaintiff maintains the ALJ did not account for his concentration limitations, this is contradicted by the ALJ's RFC formulation. The ALJ found that plaintiff had moderate difficulties in maintaining concentration, persistence and pace[4] and limited him to work

---

[3]"Social Security Rulings do not have the force and effect of law, but are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner." 20 C.F.R. § 402.35(b)(1). In *Wilson*, 378 F.3d at 549, the court refrained from ruling on whether Social Security Rulings are binding on the Commissioner in the same way as Social Security Regulations, but *assumed* that they are. [The Court] makes the same assumption in this case." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 272 n.1 (6th Cir. 2010) (emphasis in original).

[4]The ALJ's determination as to plaintiff's concentration limitations is supported by substantial evidence of record including the opinions of the consultative examining psychologists and psychiatrist, Nancy Schmidtgoessling, Ph.D., David Chiappone, Ph.D., George Lester, Psy.D., and Kevin Eggerman, M.D. *See* Tr. 506 (Dr. Schmidtgoessling opined that plaintiff exhibited a good ability to maintain concentration and attention during the examination despite his reports of "tunnel vision"); Tr. 679 (Dr. Chiappone opined that plaintiff was at most mildly

7

consisting of "simple repetitive tasks where production quotas are not critical. . . ." (Tr. 29-30).

Limiting plaintiff to simple work without strict production quotas constitutes an accommodation

of his moderate difficulties in maintaining concentration, persistence or pace. *Cf. Ealy v.*

*Comm'r of Soc. Sec.*, 594 F.3d 504, 516-17 (6th Cir. 2010 (established moderate limitations in

ability to maintain concentration, persistence, or pace are not necessarily accommodated by an

RFC for low stress, simple, routine, or unskilled work as such limitations may reflect a plaintiff's

inability to meet quotas or work at a consistent pace).

     Plaintiff has not cited to any medical evidence whatsoever that establishes he has further

concentration problems or side effects from medications not accommodated for by the ALJ's RFC

formulation. To the extent plaintiff appears to assert he experiences "tunnel vision" when he

tries to concentrate, the ALJ considered this but did not credit plaintiff's allegations as they were

inconsistent with his reports of playing video games, watching television, and reading, which all

require maintaining concentration and attention. The ALJ also determined that plaintiff was a

poor historian and that his subjective allegations were, in general, not reliable. (Tr. 31-34).

Plaintiff does not challenge the ALJ's credibility finding, nor does he cite to any other evidence

supporting his allegations of "tunnel vision." Consequently, there is no basis for finding that the

ALJ erred in assessing plaintiff's credibility or formulating the RFC.

---

impaired in his ability to remember simple one and two-step job instructions); Tr. 464 (Dr. Lester opined that plaintiff had moderate impairments in his ability to maintain attention, concentration, persistence and pace, noting that plaintiff was able to complete simple arithmetic and backwards counting despite his reports of "tunnel vision"); Tr. 402 (Dr. Eggerman opined that plaintiff had no limitation in his ability to understand, remember, and carry out short and simple instructions and was only mildly limited in his ability to understand, remember, and carry out detailed instructions).

2. The ALJ did not err in finding that plaintiff's mental impairments do not meet or equal a Listing.

Plaintiff contends the ALJ erred in failing to find that he meets or medically equals Listings 12.04, 12.05, and 12.06. (Doc. 6 at 4-9). As discussed further below, plaintiff argues that the record establishes that his depression and intellectual function manifest in symptomology satisfying the criteria of Listings 12.04 and 12.05D. (*Id.* at 5-6). However, plaintiff does not put forth any argument with respect to Listing 12.06. Plaintiff's failure to present a developed argument that he meets or equals Listing 12.06 amounts to a waiver. *See McClellan v. Astrue*, 804 F. Supp.2d 678, 688 (E.D. Tenn. 2011) (and cases cited therein) (arguments in social security appeal not raised or supported in more than a perfunctory manner may be deemed waived). Thus, the Court's review is limited to whether the ALJ erred in finding that plaintiff did not meet or equal Listings 12.04 or 12.05D.

Listing 12.04 governs affective disorders, such as depressive disorders. The required level of severity for this Listing is met when both the "paragraph A" and "paragraph B" criteria of the Listing is satisfied, or when the criteria of "paragraph C" are satisfied. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04.

To satisfy the "paragraph A" criteria of Listing 12.04, the mental impairment must result in medically documented persistence, either continuous or intermittent, of one of the following:

1. Depressive syndrome characterized by at least four of the following:
   a. Anhedonia or pervasive loss of interest in almost all activities; or
   b. Appetite disturbance with change in weight; or
   c. Sleep disturbance; or
   d. Psychomotor agitation or retardation; or
   e. Decreased energy; or
   f. Feelings of guilt or worthlessness; or
   g. Difficulty concentrating or thinking; or

> h. Thoughts of suicide; or
> i. Hallucinations, delusions, or paranoid thinking; or
> 2. Manic syndrome characterized by at least three of the following:
>> a. Hyperactivity; or
>> b. Pressure of speech; or
>> c. Flight of ideas; or
>> d. Inflated self-esteem; or
>> e. Decreased need for sleep; or
>> f. Easy distractibility; or
>> g. Involvement in activities that have a high probability of painful consequences which are not recognized; or
>> h. Hallucinations, delusions, or paranoid thinking; or
> 3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04.   To satisfy the "paragraph B" criteria for Listing 12.04, the mental impairment must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.   A marked limitation means more than moderate but less than extreme.

*Id.*, § 12.00 (C).   Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

*Id.*, § 12.00(C)(4).

> Listing 12.05 provides in pertinent part:
>
> Mental Retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> . . . .

10

D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two of the following:

    1. Marked restriction of activities of daily living; or

    2. Marked difficulties in maintaining social functioning; or

    3. Marked difficulties in maintaining concentration, persistence, or pace; or

    4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05D.   A claimant will meet Listing 12.05 for mental retardation "only '[i]f [his] impairment satisfies the diagnostic description in the introductory paragraph" and the criteria of subsection C or D.   *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A)).   Accordingly, to satisfy Listing 12.05D, a plaintiff "must establish manifestation of deficits in adaptive functioning prior to the age of 22, a valid I.Q. of 60 through 70, and at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of an extended duration."   *Dragon v. Comm'r of Soc. Sec.*, 470 F. App'x 454, 460 n.1 (6th Cir. 2012) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05D).

    "Adaptive functioning refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociocultural background, and community setting."   DSM-IV, p. 42. "Adaptive functioning" includes the plaintiff's "effectiveness in areas such as social skills, communication, and daily living skills."   *West v. Comm'r Soc. Sec. Admin.*, 240 F. App'x 692, 698 (6th Cir. 2007) (citing *Heller v. Doe by Doe*, 509 U.S. 312, 329 (1993)).   Mental retardation requires concurrent deficits or impairments in present adaptive functioning in at least two of the

11

following areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety. DSM-IV, p. 49.

Plaintiff argues that the ALJ should have determined that he meets or medically equals Listing 12.04 because he meets the criteria of paragraphs A and B of the listing.   Plaintiff specifies that he meets the paragraph A criteria as his depression is characterized by medically documented anhedonia or pervasive loss of interest, sleep disturbance, decreased energy, feelings of guilt or worthlessness, and difficulty concentrating or thinking.   Plaintiff also asserts he meets the paragraph B criteria of the listing as he has marked difficulties in activities of daily living; marked difficulties in social functioning; and marked difficulties in maintaining concentration persistence and pace.   (Doc. 6 at 5, citing Tr. 308, 400-01, 461, 463-64, 506, 621, 677, 815, 818).   Plaintiff further argues the ALJ should have found that he met or medically equaled Listing 12.05D because he has a valid verbal, performance or full scale IQ of 60 through 70 and has marked restrictions in his activities of daily living, in maintaining concentration, persistence or pace, and in social functioning.   (Doc. 6 at 5-6, citing Tr. 308, 400-01, 506, 677-79, 818).

The crux of plaintiff's listings argument appears to be based on his contention that the ALJ improperly relied on the hearing testimony of medical expert (ME), James M. Brooks, Ph.D., in finding that plaintiff's severe mental impairments did not meet or medically equal a listing.   Plaintiff's argument consists of a three-page quote of Dr. Brooks' testimony (Doc. 6 at 6-9, quoting Tr. 57-60) and two paragraphs of argument wherein he asserts that: (1) Dr. Brooks "picked and chose" evidence from the record to support his opinion while ignoring contradicting evidence; (2) the ALJ erred by giving more weight to non-examining Dr. Brooks than to that of

one-time examining psychologist, Kenneth Manges, Ph.D.; and (3) the testimony provided by

plaintiff's mother at the ALJ hearing was "lengthy and detailed" and the ALJ erred by not

considering her complete testimony as it establishes the functional limitations that meet or

medically equal Listings 12.04 and 12.05.   (Doc. 6 at 8-9).

       Plaintiff bears the burden of proving that his impairments meet or equal a listed

impairment.  *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990).   To meet this burden, plaintiff must

put forth evidence establishing that he meets all of a listing's criteria.   *Elam ex rel. Golay v.*

*Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) (citing 20 C.F.R. § 416.924(a); *Hale v.*

*Sec'y of H.H.S.*, 816 F.2d 1078, 1083 (6th Cir. 1987)).   Plaintiff may also demonstrate disability

by establishing that his "impairments are equivalent to a listed impairment by presenting

'medical findings equal in severity to all the criteria for the one most similar listed impairment.'"

*Foster*, 279 F.3d at 355 (quoting *Sullivan*, 493 U.S. at 531).   Regardless, "[t]his decision must

be based solely on medical evidence supported by acceptable clinical and diagnostic techniques."

*Land v. Sec'y of H.H.S.*, 814 F.2d 241, 245 (6th Cir. 1986) (citing 20 C.F.R. § 404.1526(b)).

       Here, plaintiff has not met his burden of establishing that his mental impairments meet or

medically equal a listed impairment.   With the exception of Dr. Manges' consultative examining

report, all of the evidence plaintiff cites in support of his argument that he meets the criteria of

Listings 12.04 and 12.05 are his own subjective reports.   *See* Doc. 6 at 5, citing Tr. 308 (plaintiff

reported difficulty remembering things and experiencing "blackouts" in a November 2009

Disability Report); Tr. 400-01 (Dr. Eggerman's consultative examination report includes

plaintiff's allegations of avoiding social situations and social anxiety); Tr. 461 (plaintiff reported

difficulties sleeping, lack of interest in previously enjoyed activities, and feelings of

worthlessness to Dr. Lester); Tr. 463-64 (plaintiff also reported difficulty with memory and

"momentary blackouts" to Dr. Lester); Tr. 506 (plaintiff reported problems with concentration to

Dr. Schmidtgoessling); Tr. 621 (plaintiff reported problems sleeping during a July 2004

examination with his treating physician Mark E. Schrand, M.D.); Tr. 677 (plaintiff reported sleep

problems, loss of interest in activities, decreased energy, and feelings of worthlessness to Dr.

Chiappone).   Plaintiff's subjective reports do not suffice as evidence establishing that his mental

impairment meets or equals one of the listed impairments.   *See Land*, 814 F.2d at 245.   *See also*

*Bradford v. Sec'y of H.H.S.*, 803 F.2d 871, 873 (6th Cir. 1986) (ALJs are not required to "credit

all of [a] plaintiff's subjective testimony and further credit only such medical testimony as is

supportive of [a] plaintiff's contentions" in making listings determinations).   It was incumbent

upon plaintiff to come forward with clinical evidence establishing that his impairments meet or

medically equal the criteria of Listings 12.04 and 12.05; plaintiff's almost exclusive reliance on

his own statements is not enough.

     Insofar as plaintiff relies on the findings of one-time examining psychiatrist Dr. Manges,

the undersigned finds that the ALJ's decision to give "less weight" to this opinion for being

inconsistent with the record as a whole is supported by substantial evidence.

     The applicable regulations lay out the three types of acceptable medical sources upon

which an ALJ may rely on: treating source, nontreating source, and nonexamining source.   20

C.F.R. §§ 404.1502, 416.902.   A treating source opinion on the nature and severity of a

claimant's impairments is generally entitled to the most weight, and the Social Security

Administration must give "good reasons in [its] notice of determination or decision for the

weight [it gives the claimant's] treating source's opinion."   *Smith v. Comm'r of Soc. Sec.*, 482

F.3d at 875.   This "good reasons" requirement applies only to treating sources.   *Id.* at 876.

"With regard to nontreating, but examining, sources, the agency will simply generally give more

weight to the opinion of a source who has examined the claimant than to the opinion of a source

who has not examined him."   *Ealy*, 594 F.3d at 514 (citing 20 C.F.R. § 404.1527(d)(1)) (internal

citations omitted).[5]   The regulations further provide that an ALJ should give more weight to an

opinion that is consistent with the record as a whole.   *See* 20 C.F.R. §§ 404.1527(c)(4),

416.927(c)(4).

There are nine medical opinions in the record regarding plaintiff's functional limitations

resulting from his mental impairments.   Five are from consultative examiners (Dr. Eggerman

(Tr. 397-403), Dr. Lester (Tr. 458-64), Dr. Schmidtgoessling (Tr. 502-06), Dr. Chiappone (Tr.

676-80), and Dr. Manges (Tr. 814-18)); three are from non-examining state agency psychologists

(Aracelis Rivera, Psy.D. (Tr. 465-68), Guy Melvin, Ph.D. (Tr. 681-84), and J. Rod Coffman,

Ph.D. (Tr. 693-709)); and the remaining is comprised of Dr. Brooks' interrogatory responses and

hearing testimony.   (Tr. 56-60, 808-13).   Dr. Eggerman examined plaintiff on September 22,

2008, and opined that he had no limitations in his ability to understand, remember, and carry out

short and simple instructions and moderate limitations in his ability to interact with others.   (Tr.

402).   Dr. Lester examined plaintiff on August 4, 2009, and opined that he had moderate

impairments in his ability to relate to others; moderate impairments in his ability to understand,

remember, and follow instructions; and moderate impairments in his ability to maintain attention,

concentration, persistence and pace.   (Tr. 463-64).   Dr. Schmidtgoessling examined plaintiff on

---

[5]Titles 20 C.F.R. §§ 404.1527 and 416.927 were amended effective March 26, 2012.   The provisions
governing the weight to be afforded a medical opinion that were previously found at §§ 404.1527(d) and 416.927(d)
are now found at §§ 404.1527(c) and 416.927(c).

15

March 13, 2002, and opined that he had good ability to maintain concentration and attention; had

adequate ability to relate to co-workers and supervisors; and was capable of understanding

simple one and two-step job instructions.   (Tr. 506).   Dr. Chiappone examined plaintiff on

February 17, 2005, and opined that he was mildly impaired in his ability to remember one and

two-step tasks; was able to maintain concentration and attention and had at most mild

impairments in his ability to carry out and persist over time due to mild depression; and was able

to relate to co-workers, supervisors, and the public.   (Tr. 679).   The non-examining state agency

reviewing psychologists found no more than moderate impairments in plaintiff's activities of

daily living; social functioning; or ability to maintain concentration, persistence or pace.   (Tr.

465-68, 681-83, 693-95).   On April 19, 2011, Dr. Brooks opined, based on his review of the

record evidence, that plaintiff did not meet or medically equal any listed impairment and had no

more than mild impairments in activities of daily living, social functioning, or maintaining

concentration, persistence or pace.   (Tr. 809-10).   Dr. Brooks' May 3, 2011 testimony at the

ALJ hearing was in line with his April 2011 opinion.   *See* Tr. 56-60.   In contrast, Dr. Manges,

who examined plaintiff on April 12, 2011, opined that his ability to understand, retain and follow

simple instructions was good in a controlled and structured environment but this was not

predictive of his ability to do so in a work setting.   Dr. Manges further opined that plaintiff had

moderate to severe impairments in his ability to effectively interact with unfamiliar persons and

significant impairments in his ability to deal with the pressure of day-to-day work.   (Tr. 814-18).

The ALJ gave "great weight" to the opinions of the state agency reviewing psychologists,

to Dr. Brooks interrogatory responses, and to the consultative examining psychologists finding

them supported by the clinical findings and consistent with the record as a whole, including

16

plaintiff's credible subjective statements. (Tr. 34). The ALJ gave "less weight" to Dr. Manges'

opinion as it was not consistent with the credible portion of plaintiff's reported activities of daily

living, was highly dependent on plaintiff's non-credible subjective reports, and was not

supported by treatment records. (*Id.*).

The above-cited evidence provides substantial support for the ALJ's decision to not credit

Dr. Manges' opinion as it stands in stark contrast to and is inconsistent with the eight other

medical source opinions of record. As Dr. Manges is the only medical source who opined that

plaintiff had severe impairments in activities of daily living, social functioning, or maintaining

concentration, persistence or pace, the ALJ reasonably determined to give his opinion less weight

as it was inconsistent with the vast majority of the opinion evidence of record. *See* 20 C.F.R. §§

404.1527(c)(4), 416.927(c)(4). By this same turn, the ALJ's finding that plaintiff does not have

marked impairments in activities of daily living, social functioning, or maintaining concentration,

persistence or pace is substantially supported by all of the opinion evidence with the exception of

Dr. Manges'. Consequently, the ALJ's determination that plaintiff's mental impairments did not

meet or medically equal the paragraph B criteria of Listing 12.04 or Listing 12.05D is supported

by substantial evidence and plaintiff's second assignment of error should be overruled.[6]

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **AFFIRMED** and this matter be closed on the

docket of the Court.

Date: _2/11/14_        _Karen L. Litkovitz_

                                     Karen L. Litkovitz
                                     United States Magistrate Judge

---

[6]As plaintiff has failed to establish that he has two marked limitations as required by Listing 12.05D, it is not necessary to address the remaining criteria, such as whether he had a valid IQ score of 60 through 70. *See Foster*, 279 F.3d at 354; *Dragon*, 470 F. App'x at 460 n.1.

17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

WILLIAM C. CHERRY,                              Case No. 1:12-cv-880
        Plaintiff,                              Spiegel, J.
                                                Litkovitz, M.J.

        vs

COMMISSIONER OF
SOCIAL SECURITY,
        Defendant.

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.   This period may be extended further by the Court on

timely motion for an extension. Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.   If the

Report and Recommendation is based in whole or in part upon matters occurring on the record at

an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or

such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless

the assigned District Judge otherwise directs.   A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in

accordance with this procedure may forfeit rights on appeal.   *See Thomas* v. *Arn*, 474 U.S. 140

(1985); *United States* v. *Walters*, 638 F.2d 947 (6th Cir. 1981).

18